Argued and submitted May 25, reversed October 24, 1984

In the Matter of the Compensation
of Michael J. Johannesen, Claimant.
JOHANNESEN,
*Petitioner,*

*v.*

N.W. NATURAL GAS CO. et al,
*Respondents.*

(82-03482 & 82-08599; CA A29728)

689 P2d 1018

Douglas A. Swanson, Portland, argued the cause for peti-
tioner. With him on the brief were Royce, Swanson &
Thomas, Portland.

Jerald Keene, Portland, argued the cause for respondents.
With him on the brief were Roberts, Reinisch & Klor, P.C.,
Portland.

Before Richardson, Presiding Judge, and Rossman and
Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant petitions for review of an order of the Workers' Compensation Board that reversed the order of the referee and denied his occupational disease claim for degenerative arthritis in both knees. The issue here is compensability. We reverse.

Claimant, age 43, worked for Northwest Natural Gas Company as a serviceman for 18 years. He had to kneel or squat on almost all of his service calls. He made 10 to 35 calls a day and over 70,000 service calls during his employment. Claimant often worked overtime. Occasionally he worked up to 12 hours a day, seven days a week. On some of his service calls claimant had to kneel in cold slushy water in below-freezing weather. Prior to his employment with Northwest Natural Gas Company in 1963, claimant had no symptoms of an arthritic condition.

Claimant has also suffered the following knee injuries:

(1) An injury to his left knee in a high school football game. He then had an operation called a meniscectomy to repair a torn cartilage.

(2) An injury in 1964 when he twisted his right knee while walking down stairs at work.

(3) Reinjury of his right knee during a touch football game in 1965. He had a meniscectomy to his right knee.

(4) A compensable injury to his left knee when he fell at work on June 20, 1980.[1]

Claimant's condition first became symptomatic during the winter of 1977-1978 after he had worked as a serviceman for the gas company for 15 years. At that time he began to have problems at work with both knees. Three times a week between February and October, 1978, claimant jogged a mile or two to strengthen his knees. He stopped jogging on the advice of Dr. Zimmerman, his treating physician at that time, from whom he then first learned that he had degenerative arthritis in his knees. He has difficulty at work getting up after

---

[1] Claimant fell at home in July, 1979, but only had "slight abrasions" on his left knee and buttocks.

being on his knees and in climbing stairs and ladders. He has tried unsuccessfully to obtain a less strenuous job with his employer.

■■ To recover claimant must show a worsening of the underlying arthritic disease, *Weller v. Union Carbide*, 288 Or 27, 602 P2d 259 (1979),[2] and that his work activity was the major contributing cause of that worsened condition. *See SAIF v. Gygi*, 55 Or App 570, 574, 639 P2d 655, *rev den* 292 Or 825 (1982). We find that claimant has sustained his burden of proving compensability. Claimant's testimony and the reports of his two doctors establish that his arthritis has worsened and that his strenuous work activity, particularly his extensive kneeling, squatting and stair climbing, was the major contributing cause of that worsening.

The chart notes of Dr. Zimmerman show a pattern of recurring symptoms corresponding with claimant's service work:

"I have told him that *his job as a serviceman for the gas company is probably in jeopardy because of his knees,* and in the future he will have to consider something else. January 16, 1979

"* * * * *

"He was doing a different job for the gas company, then he had to go back to his old job. *Since he has been back his knees have gradually started hurting him again.* He says he gets depressed when he thinks about what he will do in the future. But he has noted a real relationship between the type of work he does and how much his knees bother him. March 27, 1981

"* * * * *

"Since being seen her *[sic]* last he states that he had some job change in December and January of 1981. He worked the relief shift and during that time his knees did not hurt him. Then he had to return to service work until July and through July and August he worked the relief and his knees were better. Then in October *he returned to service and his knees have bothered him. He says climbing ladders bothers him* * * *. I believe this gentleman who has previously had injuries to his knee with meniscectomies is having degenerative changes on the medial side, primarily, with irritability when he over uses the knees. I have told him that this is related to

---

[2] Claimant also argues that his work *caused* the occupational disease.

activity, that he should live within the limits of tolerance of his discomfort, that *if he forces the knees, such as with lots of stair climbing and kneeling, that the degenerative process will probably be accelerated as compared to a sedentary type of occupation.* January 2, 1982." (Emphasis supplied.)

Dr. Rusch, an orthopedist and claimant's treating physician at the time of the hearing, wrote on June 10, 1982:

"In my opinion, Mr. Johannesen's condition with regards to both knees are *[sic]* permanent and likely to become progressively more disabling with further passage of time and useage *[sic]* of the lower extremities.

"Upon review of the medial *[sic]* records of Dr. Zimmerman of October 1978, it is apparent that Mr. Johannesen had a clinically recognizable signs and symptoms of degenerative osteoarthritis of both knees as well as the ligamentous instability of the right knee at that time. It appears apparent that Dr. Zimmerman's chart notes (which is generally recognized to be a medical fact) that *any use of the lower extremities in walking, kneeling, squatting, or other active physical activities of the lower extremities would lead to progressive deterioration of the underlying degenerative osteoarthritis.*

"It is my opinion that *it is within the realm of reasonable medical probability that the work activity associated with Mr. Johannesen's work at the Northwest Natural Gas Company over the period of the last twenty years has materially contributed to a worsening of the underlying condition of both his knees.* It must also be recognized, however, that other strenuous activities which Mr. Johannesen may have engaged in which may not have been associated with his work, such as walking, jogging, kneeling, or squatting would also contribute to this worsening of that underlying condition. The extent to which this physical activity leads to the worsening of that condition as opposed to the natural progression or worsening of the underlying condition is unknown." (Emphasis supplied.)

Most of claimant's walking, kneeling and squatting occurred on the job. *See* ORS 656.802(1)(a). Since 1978 he has done very little strenuous activity outside of his work. These other activities are minimal compared to claimant's work activity. The referee, who found claimant's condition compensable, also found he was a credible witness, discounted his jogging after 1978, and stated that he "has not engaged in

outside activities which may have been a major contributing cause as opposed to his work activities":

> "I believe claimant's testimony he has not jogged since 1978. He does not engage in outside sports. He has not engaged in weight lifting for 10 or 15 years or played in a basketball league since his twenties."

The Board ruled that claimant had not met his burden of proof that his work activity was the major contributing cause of his condition or its worsening. The Board, however, misread the evidence and incorrectly assessed the amount of claimant's previous exercise and its impact on his knees. The Board also stated that only Dr. Rusch addressed causation. Although it noted that "exact legal phraseology" is not required, the Board stated that Dr. Rusch referred to claimant's work activities as a "material" contributing cause "rather than the major cause." The Board did not give adequate weight to claimant's testimony on causation or to the chart notes of Dr. Zimmerman that do show the relationship between claimant's kneeling, squatting and stair-climbing at work and the worsened condition of his knees. The Board also emphasized Dr. Rusch's statement that he did not know the impact on claimant's arthritis of his physical activity outside of work and of the natural progression of the condition. The Board, however, incorrectly believed that claimant "regularly played basketball up to two times per week and was jogging, apparently daily, until he began suffering knee pain in 1978." Claimant stopped playing regular basketball ten years ago. He jogged a mile or two, two or three times a week for a nine-month period in 1978. He lived nine blocks from work and ran four miles twice to see how far he could go.

Although claimant's doctors did not use the words "major contributing cause" we find that medical and other evidence in the record establishes that the strenuous work activity of claimant's employment was the major contributing cause of the worsening of his arthritis. *See also Garbutt v. SAIF,* 297 Or 148, 681 P2d 1149 (1984). Claimant's condition is compensable.

Reversed. Referee's order reinstated.